## BIGGERS *v.* EQUITABLE MANUFACTURING COMPANY.

1. An agreement by one not to plead failure of consideration until certain reasonable conditions relating to the sale of goods, their "warranty and exchange," are complied with, is binding upon the promisor.
2. Where a party enters into and signs a written contract, he can not set up as a defense to a suit thereon a mere contemporaneous parol promise made by the agent of the plaintiff that the said agent would subsequently affix a printed "slip" to the contract, which would add new and material conditions thereto, and that these conditions had not been complied with by the plaintiff. This would be, in effect, to add to and vary the terms of a written contract, by parol evidence.
3. The plaintiff having brought suit against the defendant upon a written order for goods, on the face of which appear certain conditions, in the absence of distinct averments in the petition that the goods ordered had been delivered and the said conditions complied with, which would require denials or admissions by the defendant in his plea, it would be necessary to show these facts by evidence, before the court would be authorized to direct a verdict for the plaintiff; and in the absence of this proof it was error for the court to direct a verdict.

Argued January 19,—Decided February 21, 1906.

Complaint. Before Judge Fite. Catoosa superior court. February 9, 1905.

*W. E. Mann,* for plaintiff in error.

*W. H. Odell* and *R. J. & J. McCamy,* contra.

BECK, J. The Equitable Manufacturing Company brought suit against Biggers for the price of a lot of jewelry which he had bought from the plaintiff under the terms of a written contract which was attached to the petition. The contract contained the following stipulation: "This sale is made under inducements and representations herein expressed, and no others. The purchaser hereby waives all right to claim failure of consideration or goods are not like sample or not according to order, unless he has exhausted the terms of warranty and exchange." And the terms of warranty and exchange were as follows: "Any jewelry in this assortment failing to wear satisfactorily will be duplicated free of charge, if returned to us within five years. Jewelry can be exchanged for new jewelry in plated, filled, or solid gold, any time within twelve months from date of invoice." The defendant pleaded

the general issue, subsequently adding other defenses to his plea by way of amendment. The last amendment sought to establish that the contract was procured by fraud, and that there had been a failure of consideration. The fraud alleged is as follows: that the agent of the plaintiff came to the place of business of the defendant, and, after having failed to get the defendant to sign the contract as it was first presented to the defendant, told him that he (the agent) "had a paper called a slip, which was an unconditional guarantee of $58 a year profit for three years,—in other words, said the agent, 'it is the same as giving you that for standing room for the jewelry case in your store, and we will give you a bond to guarantee you the $58 a year profit, unconditionally.' Defendant asked to see the slip containing the guarantee and bond, but the said agent told this defendant that he was out of them and that he had none with him, but all there was in the slip was an unconditional guarantee of fifty-eight dollars a year profit for three years, and that the bond was given to protect the purchaser in the guarantee of said profits, and said we can just put it on here (meaning the paper), and said agent, H. H. Perkins, signed on said alleged contract the following: 'The Equitable Mfg. Co. hereby agrees to send a bond of $185 to the South Chattanooga Saving Bank, to protect the purchaser in all the conditions of trade, including the guarantee of profits of $58.00 a year each year for three years, per slip furnished by the Equitable Mfg. Co. H. H. Perkins, Salesman.'" The defendant further alleged in the amendment, that he had no opportunity to see the slip, but that the agent "promised to send him one, which he never did, but said, before this defendant signed the paper sued on, 'I have told you all there is in them, and have written it here.'" The slip that was attached to the contract was as follows: "Profits guaranteed.—We guarantee that the gross profits to the purchaser from the sale of the jewelry purchased hereunder and the jewelry hereafter purchased as hereinafter provided will average fifty-eight dollars a year from the date of shipment; if the gross profits do not average fifty-eight dollars, we will pay by draft to the purchaser an amount sufficient to make up the deficiency, under the following conditions: First, that the purchaser settle for the goods as herein provided, and if the settlement is made by note, pay the same when due. Second, that the purchaser buy from us from time to time, at least quarterly, either directly or from our salesman,

sufficient new jewelry at the prices named in the order to keep the assortment up in value to the amount of this order. Third, that the purchaser keep a complete and accurate record of all goods sold, which record must show the number of the article sold, the cost price, the price at which it is sold, and the name and post-office address of the buyer, and that a copy of said record, together with an itemized inventory of the jewelry remaining on hand unsold, be send [sent?] by registered letter at the end of each year to us. Fourth, that the purchaser keep the jewelry well and tastily displayed in his store, in the showcase furnished for that purpose. Fifth, that the purchaser will not sell or dispose of any article of jewelry at a less profit above the cost price, as listed on this agreement, than is usually made on jewelry."

The plea of failure of consideration was, in substance, as follows: that within a reasonable time after the goods were received by the defendant he discovered that they were not merchantable, "and defendant notified the said plaintiff and proposed to ship them back and pay the expenses of so doing, but this was refused by the plaintiff. Said goods soon tarnished, and defendant notified the plaintiff as above set out, but they refused to take them back. Defendant returned some of them, but the goods sent him in place of the ones returned were worse, if possible, than the others. Defendant had no opportunity to send any others back, as the said plaintiff was so busy in trying to get the negotiable notes from this defendant, so, as defendant charges and believes, that it might place them in the hands of innocent purchasers to carry out its plan to defraud this defendant; that when defendant refused to give negotiable notes upon discovering said fraud, that suit was brought on said contract and all opportunities to carry out any further return or exchange of goods were cut off, even if this defendant had been under any obligation to do so." The amended plea was stricken and the jury instructed to return a verdict in favor of the plaintiff; to which orders of the court the defendant excepted.

.1. This case has been to this court twice before. (119 *Ga.* 100; 121 *Ga.* 381.) When last decided, the court held: "The right to claim failure of consideration was expressly waived, unless the defendant should exhaust the terms of warranty and exchange as specified in the contract, and there was not even an intimation in the plea that defendant had complied, or made any effort to comply,

with such terms." While the plea attempting to set up failure of consideration, which was held to be bad, was amended on the last trial of the cause, it does not, construing its terms most strongly against the pleader, show that the defendant had exhausted the terms of warranty and exchange as specified in the contract. It does not go further than to show that the defendant had returned for exchange a part of the goods—whether a large portion or an infinitesimally small part is left entirely to conjecture; and all of the doubts which are left upon our minds by this indefinite plea would have to be resolved in favor of the pleader before we could hold that he had sufficiently complied with the terms of the contract to entitle him to the benefits of this plea of failure of consideration; and the established rules for construing pleadings do not permit us to solve these doubts in the defendant's favor.

2. The contract as it stood when first submitted to the defendant for his signature thereto contained no reference or representations as to profits that the purchaser could or might make by the sale of the jewelry under the terms of the contract; but on the contrary, as hereinbefore stated, it was expressly stipulated that "this sale is made under inducements and representations herein expressed, and no others." But the salesman, the agent of the plaintiff, added in writing the further stipulation: "The Equitable Mfg. Co. hereby agrees to send a bond of $185 to the South Chattanoga Saving Bank, to protect the purchaser in all the conditions of trade, including the guarantee of profits of $58 a year, each year for three years, per slip furnished by the Equitable Mfg. Co." And for the purposes of this decision we treat this written agreement as binding upon the plaintiff company. In itself it is nothing more than an agreement to forward a bond binding the plaintiff to protect the defendant in all the conditions of the trade, including the guaranty of profits of fifty-eight dollars a year for three years, and the defendant nowhere in the plea that was stricken alleges or intimates that a bond according to these terms was not furnished, but insists that the agent agreed that a "slip" would be attached to the contract, guaranteeing unconditionally the amount of $58 per year as profits; whereas, as the defendant contends, the slip which was actually attached contains numerous conditions. As will be observed on reading the plea, the defendant relies, for the purposes of this defense, upon the agreement to attach to the

contract signed a clause containing an "unconditional guarantee;" and to support this contention he must rely upon oral evidence of a parol promise, which would vary and add to the terms of a written contract; and a written contract can not be altered in its terms by evidence of this character. There were no misrepresentations as to the actual contents of the instrument signed. The parties signing might have had the contents of the slip written in the face of the contract before affixing their signatures. The defendant, did not sign under an emergency. He does not pretend that he did not read the paper, and at the very head of it, in large type, stands the caution, "this sale is made under inducements and representations herein expressed, *and no others*" [italics ours]. And these words, staring the defendant in the face at the time of entering into the contract, were a caution and a warning that the agent—a mere salesman—had no authority to make stipulations other than those contained in the instrument itself. And the plaintiff company was in position to invoke the well-settled rule that parol evidence will not be admitted to add to or vary the terms of a written contract. See *Bostwick* v. *Duncan*, 60 *Ga.* 383; *Walton Guano Co.* v. *Copelan*, 112 *Ga.* 319; *Chicago Building Company* v. *Summerour*, 101 *Ga.* 820.

3. The plaintiff having brought its suit upon an express contract, which consisted of an order for certain goods, made to it by the defendant, the completion of the contract would depend upon whether or not the plaintiff had delivered to the defendant the goods specified in the order, according to the terms thereof. There was no paragraph in the plaintiff's original or amended petition alleging that the goods had been shipped or delivered to the defendant, nor was there any proof introduced showing that this was true; but, all the pleas of the defendant having been stricken, the verdict was directed by the court. If there had been a distinct averment in the petition that the goods had been delivered and all the conditions of the contract complied with by the plaintiff, the failure of the defendant to deny this in his plea would have dispensed with the necessity of proof; but, no such averment having been made by the plaintiff in the declaration, it was not entitled to a verdict in the absence of proof establishing its compliance with the conditions of the contract sued upon; and a new trial must be awarded.					*Judgment reversed. All the Justices concur.*